# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FIRE PROTECTION ASSOCIATION, INC., <br> Plaintiff, <br><br> v. <br><br> UPCODES, INC., <br> Defendant. | CV 21-5262 DSF (E) <br><br> Order DENYING Plaintiff's Motion for a Preliminary Injunction (Dkt. 13) |

Plaintiff National Fire Protection Association, Inc. (NFPA) seeks a preliminary injunction prohibiting Defendant UpCodes, Inc. "from infringing by any means, directly or indirectly, NFPA's exclusive rights under § 106 of the Copyright Act . . . including by reproducing, distributing, or displaying NFPA's copyrighted standards . . . or creating derivative works thereof." Dkt. 13 (Mot.) at 1. UpCodes opposes. Dkt. 26 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

NFPA is a nonprofit organization "devoted to eliminating death, injury, and property and economic loss due to fire, electrical, and related hazards." Dkt. 13-2 (Pauley Decl.) ¶ 2. NFPA publishes more than 300 standards for installations, including the National Electrical Code (NEC). Id. ¶¶ 4, 7. The NEC addresses, among other subjects,

the installation of electrical conductors, equipment, and raceways; signaling and communications conductors, equipment, and raceways; and optical fiber cables and raceways in commercial, residential, and industrial occupancies.  Id. ¶ 7.

The primary users of NFPA standards are professionals and tradespeople from the architecture, engineering, and construction industry.  Id. ¶ 9.  Users access the contents of NFPA's standards for free on its website or by purchasing physical copies or online-access subscriptions.  Id.  NFPA's subscription service, which provides standards and online tools, is called NFPA LiNK.  Id. ¶ 10.  NFPA owns copyrights in all the standards it publishes.  Id. ¶¶ 13-14.

Federal agencies, states, and local governments sometimes incorporate NFPA's standards, or portions of the standards, by reference into their regulations, statutes, and ordinances.  Id. ¶ 20.[1]  When the standards are incorporated by reference, they are "available through multiple channels, including in most cases at the relevant government office or libraries; for free viewing access on NFPA's website; and for license or sale from NFPA."  Opp'n at 3 (citing Pauley Decl. ¶¶ 9, 31, 35, 36, 41).  The standards on NFPA's website are read-only.  Pauley Decl. ¶ 32.

UpCodes is a for-profit corporation that was founded "to make it easier for both industry professionals and laypeople to understand how to comply with state and local building codes" by putting the building codes on a website for the public to access for free.  Dkts. 13-17 (Klaus

---

[1] NFPA provides the following example: Minn. R. 1315.0200, Subp. 1a ("All new electrical [systems] must comply with the regulations contained in the 2020 edition of the National Electrical Code (NEC) as approved by the American National Standards Institute (ANSI/NFPA 70-2020), Minnesota Statutes, section 326B.35, and the Minnesota State Building Code as adopted by the commissioner of labor and industry.  The 2020 edition of the National Electrical Code, developed and published by the National Fire Protection Association, Inc., is incorporated by reference and made part of the Minnesota State Building Code.").  Mot. at 3 n.1.

2

Decl.) ¶ 5, 26-1 (Reynolds Decl.) ¶¶ 3-4. Unlike NFPA's website, UpCodes' website allows users to download or print the standards that have been incorporated by reference in a jurisdiction for free, or view the standards for free without registering for an account. Klaus Decl. ¶¶ 10-11; dkts. 25-26; Reynolds Decl. ¶¶ 14-16. Users can also access advanced search and collaboration tools on UpCodes by paying a subscription fee. Reynolds Decl. ¶¶ 17-18. UpCodes started uploading NFPA's standards to its website on April 1, 2021. Id. ¶ 21.

## II. LEGAL STANDARD

A preliminary injunction "prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878-79 (9th Cir. 2009) (alteration in original) (quoting Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal., 840 F.2d 701, 704 (9th Cir. 1988) and citing Heckler v. Lopez, 463 U.S. 1328, 1333 (1983) (stating a preliminary injunction "freezes the positions of the parties until the court can hear the case on the merits")).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted).

## III. DISCUSSION

NFPA contends it is likely to prevail on its claim for copyright infringement because it holds a valid copyright and UpCodes has infringed on its reproduction, derivative work, distribution, and public display rights. Mot. at 9-10. The parties do not dispute that NFPA has a valid copyright in its material and that UpCodes reproduced and disseminated NFPA's materials. The parties argue, however, about whether UpCodes is publishing law that is in the public domain or protected material, and about several affirmative defenses, including fair use.

The Court need not reach the parties' various arguments about the importance of authorship and merger, or whether guiding notes are part of the law. UpCodes disseminates parts of the standards that have not been adopted into law, which would support a claim for copyright infringement regardless of whether a private party can have copyright in material that is incorporated by reference into a law. But NFPA has not demonstrated it is likely to succeed on its claim for copyright infringement because it has not demonstrated UpCodes' reproduction of its standards is not fair use. The Court has insufficient information before it to make that determination at this time. A preliminary injunction is therefore not warranted.

### A.  "No One Can Own the Law"

UpCodes first argues that Georgia v. Public.Resource.Org, Inc., 140 S. Ct. 1498, 1507 (2020) (PRO), establishes that statutes and regulations cannot be copyrighted, and the texts at issue here are in the public domain because they are attributable to legislators speaking in their legislative capacity. Opp'n at 4-8. In PRO, the Supreme Court addressed whether there was copyright protection for "original works of authorship" in the annotations contained in Georgia's official annotated code, which were created by a private entity through a work-for-hire arrangement with the legislature. 140 S. Ct. at 1504. The Court found "[b]ecause Georgia's annotations are authored by an arm of the

legislature in the course of its legislative duties, the government edicts doctrine puts them outside the reach of copyright protection." Id.

The parties argue about the breadth of this holding, the effect of issues such as whether the code was created as a work-for-hire, and the impact of PRO on other cases such as Practice Management Information Corp. v. American Medical Association, 121 F.3d 516, 517 (9th Cir. 1997), amended, 133 F.3d 1140 (9th Cir. 1998), and Veeck v. South Building Code Congress International, Inc., 293 F.3d 791, 800 (5th Cir. 2002). See, e.g., Mot. at 14 n. 3; Opp'n at 4-10; dkt. 28 at 2-5. The Court needs not reach these arguments because NFPA provided evidence that UpCodes reproduces more than just the portion of the standards that have been adopted into law.

In its opposition, UpCodes states, "with respect to each jurisdiction, UpCodes disseminates only those portions of the publications at issue that were actually adopted as the law. For example, Chicago did not adopt Article 604 of the 2017 National Electrical Code, and UpCodes does not disseminate that unadopted section when it shows the law of Chicago." Opp'n at 19-20 (citing Reynolds Decl. ¶ 12; dkts. 26-3, 26-30 (Chicago Municipal Code) § 14E-6-604). But NFPA submitted evidence that although the document omits Article 604 when viewed on the website, dkt. 26-3, when the codes under UpCodes' Chicago heading are saved as a local copy, they contain the entirety of Chapter 6, including Article 604, dkts. 28-5 ¶¶ 3-5, 28-7 (a downloaded copy of the Chicago code with Article 604 incorporated), 28-8 (same for Delaware).

Because Article 604 was explicitly excluded from the Chicago codes, it is not subject to any possible exemption from copyright protection for private material that has been incorporated by reference into a law. NFPA is thus likely to establish the elements for copyright infringement. See Int'l Code Council, Inc. v. UpCodes, Inc., No. 17 CIV. 6261 (VM), 2020 WL 2750636, at *18 (S.D.N.Y. May 27, 2020) (ICC) (denying defendant ICC's motion for summary judgment because "ICC has still raised genuine factual disputes suggesting that at least some codes posted on Current UpCodes have 'indiscriminately mingled'

5

enacted text with unadopted model text. For example, until the ICC Opposition was filed, Current UpCodes displayed Appendices A and H to the IFC 2015 as part of the Wyoming Fire Code even though Wyoming adopted neither."). As discussed below, however, NFPA has not demonstrated it is likely to succeed on this claim because there are outstanding questions about whether UpCodes' reproduction was fair use.

B.    Fair Use

UpCodes asserts that, to the extent any of the material it reproduced is not "the law," reproducing it in its entirety is fair use. Opp'n at 14. The fair use defense provides that "the fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. When considering whether a particular use is fair, courts must consider the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Id. "The factors enumerated in the section are not meant to be exclusive: '[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.'" Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560 (1985) (alteration in original) (quoting H.R. Rep. No. 94-1476, at 65 (1976), as reprinted in 1976 U.S.C.C.A.N. 5659, 5678).

6

The four enumerated fair use factors should not be considered in isolation but "are to be explored, and the results weighed together, in light of the purposes of copyright," Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 578 (1994), which are "promot[ing] the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8. However, the first and fourth enumerated factors are generally more significant than the second and third. Authors Guild v. Google, Inc., 804 F.3d 202, 213-14 (2d Cir. 2015). "The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." Campbell, 510 U.S. at 577.

### 1.   Purpose and Character of the Use

The first factor asks courts to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The fact that an infringing "publication was commercial as opposed to nonprofit . . . tends to weigh against a finding of fair use." Harper & Row, 471 U.S. at 562. Though it is not strictly necessary for a fair use to be transformative, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Campbell, 510 U.S. at 579. Similarly, where a work is not transformative, the commercial nature of an allegedly infringing use takes on greater significance. TCA Television Corp. v. McCollum, 839 F.3d 168, 183 (2d Cir. 2016).

In ICC, 2020 WL 2750636, at *24-25, an almost factually identical case brought against UpCodes, the district court found disseminating enacted laws for public awareness was a transformative purpose and "seem[ed] consistent with illustrative purposes articulated in the Copyright Act, including teaching, scholarship, and research." The district court relied on American Society for Testing & Materials, et al. v. Public.Resource.Org, Inc., 896 F.3d 437, 450 (D.C. Cir. 2018) (ASTM), another factually similar case (although the defendant was a non-profit company and had copied only the text of the laws, not any additional material). ICC, 2020 WL 2750636, at *24. In ASTM, the D.C. Circuit stated that "in certain circumstances, distributing copies of

7

the law for purposes of facilitating public access could constitute transformative use." 896 F.3d at 450.

Guided by the D.C. Circuit's reasoning, the <u>ICC</u> court found:

> The underlying I-Codes drafted by ICC primarily serve the purpose of model codes, providing recommendations on the standards that governments should adopt to improve and safeguard their built environments.  By contrast, the I-Codes as Adopted are actual regulations binding the public and governing its conduct.  Because Current UpCodes provides the I-Codes as Adopted to the general public for free, it clearly does so with a purpose different from that which ICC has when it creates and distributes the model I-Codes.

<u>ICC</u>, 2020 WL 2750636, at *25.  The Court finds the same reasoning applies here, and therefore that UpCodes reproduced the portion of the code that is law with a transformative purpose.

As to the I-Code Redlines, however, which were explanatory and did not outline clear legal obligations, the court could not say the purpose of publishing them was transformative.  It found that although UpCodes argued the Redlines helped the members better understand their legal obligations (much like the informational notes and permissive rules at issue here), the information would be less probative than something like legislative history because it was authored by private authors.  <u>Id.</u>  Moreover, that the Redlines were available only to paying customers "may [have] partially offset any transformative nature of the use, though Supreme Court precedent makes clear that the commercial quality of a use alone should not outweigh convincing transformative qualities."

The Court finds the same reasoning applies here.  The informational notes and permissive rules at issue here are also less persuasive than legislative history or similar resources as they were authored by a private entity.  Unlike in <u>ICC</u>, the informational notes and permissive rules at issue are available on the free version of

8

UpCodes' website, which may support a transformative purpose. But the Court cannot say that reproducing the informational notes and permissive rules, which may not be binding law, "adds something new and important." Google LLC v. Oracle Am., Inc., 141 S. Ct. 1183, 1203 (2021).

That UpCodes is a for-profit entity (even if it provides free access to the codes) also weighs against a finding of fair use. And reproducing sections like Article 604 that have explicitly not been adopted into law clearly does not serve a transformative purpose. Disseminating a portion of the code that is not law cannot assist users in better understanding their legal obligations. Because the transformative value is low, is it more significant that UpCodes is a for-profit company. Campbell, 510 U.S. at 579. Considering all these elements together, the Court finds this factor weighs for a finding of fair use for the portions of the code that have been incorporated by reference and against a finding of fair use for the portions that have not.

### 2. Nature of Copyrighted Work

"The second statutory factor, 'the nature of the copyrighted work,' 17 U.S.C. § 107(2), 'calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.'" Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 143 (2d Cir. 1998) (quoting Campbell, 510 U.S. at 586). Courts often ask whether the work is factual or fictional, as "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." Harper & Row, 471 U.S. at 563.

In ACTM, the D.C. Circuit found that "[a]ll of the works at issue here fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use." 896 F.3d at 451. The Circuit stated, "Were these ordinary technical standards used for no public purpose, the district court might well be correct. But the standards at issue here have all, in some capacity, been incorporated by reference into law, and, as the cases PRO relies on for its constitutional argument make

9

clear, the express text of the law falls plainly outside the realm of copyright protection." Id. The Circuit also noted that "where the incorporation does not lend to such easy substitution, fair use is harder to justify." Id. at 452.

The Court finds the same is true here. The actual text of the law is factual, which weighs strongly in favor of a finding of fair use. See also ICC, 2020 WL 2750636, at *26. The informational notes and portion of the code that has not been adopted into law, however, are a closer question, as there is more of an argument for protecting the expression of the text. But even though the expression is more protectable, the content is largely factual and therefore weighs in favor of a finding of fair use. See id. ("And though the I-Code Redlines feature model code text that was not incorporated into law, that text is nevertheless factual rather than fictional.").

### 3. Amount and Substantiality of the Portion Used in Relation to the Work as a Whole

The third fair use factor asks about "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The Supreme Court has explained that "the extent of permissible copying varies with the purpose and character of the use" and characterized the relevant inquiry as whether "'the amount and substantiality of the portion used['] . . . are reasonable in relation to the purpose of the copying." Campbell, 510 U.S. at 586-87 (quoting 17 U.S.C. § 107(3)).

"[A] finding of fair use is more likely when small amounts, or less important passages, are copied than when the copying is extensive, or encompasses the most important parts of the original." Authors Guild, 804 F.3d at 221. The copying of entire works "does not preclude a finding of fair use, [but] it militates against such a finding." Am. Geophysical Union v. Texaco Inc., 60 F.3d 913, 926 (2d Cir. 1994). "Complete unchanged copying has repeatedly been found justified as fair use when the copying was reasonably appropriate to achieve the copier's transformative purpose and was done in such a manner that it

10

did not offer a competing substitute for the original." Authors Guild, 804 F.3d at 221.

The Court again finds ICC instructive. The court there first noted that in ASTM, the D.C. Circuit stated that where a defendant "limits its copying to only what is required to fairly describe the standard's legal import, this factor would weigh strongly in favor of finding fair use here, especially given that precision is ten-tenths of the law." 896 F.3d at 452. The ICC court therefore found the accurate copying of I-Codes was fair use. 2020 WL 2750636, at *27.

But the reproduction of the I-Codes Redlines did not favor a finding of fair use because "copying would obviously be excessive if posting the I-Code Redlines is not transformative, or Defendants may have been able to achieve their transformative goals with less than complete reproduction of unadopted model code text." Id. The court also noted the third factor, as with the second factor, did not carry dispositive weight. Id. The same reasoning applies here, and the Court further notes that the vast majority of what UpCodes has reproduced is the text that has been incorporated by reference into law. On the whole, this factor therefore weights in favor of fair use.

### 4. Effect on the Potential Market

The fourth fair use factor – "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4) – "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." Campbell, 510 U.S. at 590 (alteration in original) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.05[A][4], at 13-102.61 (1993)).

In evaluating this factor, the court "must take account not only of harm to the original but also of harm to the market for derivative works." Harper & Row, 471 U.S. at 568. "The Factor Four analysis is concerned with only one type of economic injury to a copyright holder:

11

the harm that results because the secondary use serves as a substitute for the original work." Authors Guild, Inc. v. HathiTrust, 755 F.3d 87, 99 (2d Cir. 2014); see also Castle Rock, 150 F.3d at 145 ("In considering the fourth factor, our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps or substitutes for the market of the original work.").

The ICC court noted that "unlike the other factors, the fourth fair use factor could potentially weigh against Defendants' copying of the I-Codes as Adopted" because it is fair to say an enacted law identical to an I-Code is an effective substitute for the model code itself. 2020 WL 2750636, at *28. The court stated the Redlines appear to have been competing substitutes for ICC's derivative works, but there was little clear evidence on whether the Redlines actually affected revenues for the derivative works. Id.

Here, NFPA states "[t]here is no question that if anyone could do what UpCodes is doing, the market for NFPA's works would be destroyed." Mot. at 21. But although the codes on UpCodes' website do seem like they would serve as a substitute for NFPA's standards, there is not yet any evidence of any effect on the potential market beyond speculation.

ASTM, 896 F.3d at 453, and ICC, 2020 WL 2750636, at *28-29, had different procedural postures, as both were decided at the summary judgment stage. But because of the same uncertainties articulated in ICC, 2020 WL 2750636, at *28-29, and balancing all the factors together, the Court cannot say NFPA is likely to prevail on its claim for copyright infringement because of the uncertainties regarding UpCodes' fair use defense. The Court finds NFPA has not established it is likely to prevail on its claim. A preliminary injunction is therefore inappropriate at this time.

## IV. CONCLUSION

Because NFPA has not established it is likely to succeed on its claim for copyright infringement, its motion for a preliminary injunction is DENIED without prejudice to a motion based on a fuller record.

IT IS SO ORDERED.

Date: August 9, 2021

Dale S. Fischer
United States District Judge