RAGESH K. TANGRI (SBN 159477)
rtangri@mofo.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@mofo.com
EUGENE NOVIKOV (SBN 257849)
enovikov@mofo.com
HANNAH JIAM (SBN 312598)
hjiam@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415-268-7000

Facsimile: 415-268-7522

Attorneys for Defendants
UPCODES, INC., SCOTT REYNOLDS, and
GARRETT REYNOLDS

*(additional counsel listed on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE PROTECTION ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> UPCODES, INC., SCOTT REYNOLDS, AND GARRETT REYNOLDS, <br><br> Defendant. | Case No. 2:21-cv-05262-SPG-E <br><br> **NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF THE REPLY EXPERT REPORT OF JUSTIN MCLEAN** <br><br> Date:   Wednesday, July 5, 2023 <br> Time:   1:30 p.m. <br> Ctrm:   5C <br> Judge:   Honorable Sherilyn Peace Garnett <br><br> **REDACTED VERSION** |

1   ALLYSON R. BENNETT (SBN 302090)
    abennett@mofo.com
2   MARK D. MARCISZEWSKI (SBN 344240)
    mmarciszewski@mofo.com
3   MORRISON & FOERSTER LLP
4   707 Wilshire Boulevard, Suite 6000
    Los Angeles, CA 90017-3543
5   Telephone: 213-892-5200
    Facsimile: 213-892-5454
6
7   ADITYA V. KAMDAR (SBN 324567)
    akamdar@mofo.com
8   MORRISON & FOERSTER LLP
    2100 L Street, NW, Suite 900
9   Washington, DC 20037
    Telephone: 202-887-1500
10  Facsimile: 202-887-0763
11
    Attorneys for Defendants
12  UPCODES, INC., SCOTT REYNOLDS,
    and GARRETT REYNOLDS
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E
sf-5491911

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, July 5, 2023, at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 5C, of the above-captioned Court, located at 350 West First Street, Los Angeles, California 90012, Defendants UpCodes, Inc., Scott Reynolds, and Garrett Reynolds (collectively, "Defendants" or "UpCodes") will and hereby do move for an order to strike portions of the Reply Expert Report of Justin McLean.

This Motion is based upon this Notice of Motion, Memorandum of Points and Authorities, the Declaration of Allyson R. Bennett and exhibits thereto, and any other papers or argument of counsel that may be filed or submitted in connection with this Motion.

Dated:  April 26, 2023

MORRISON & FOERSTER LLP

By: _/s/ Allyson R. Bennett_
ALLYSON R. BENNETT

_Attorneys for Defendant_
UPCODES, INC., SCOTT REYNOLDS, and GARRETT REYNOLDS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

      A.    NFPA's refusal to produce license agreements ..................................... 1

      B.    NFPA's opening reports did not include licensing revenue as an
            element of damages ................................................................................ 2

      C.    NFPA's improper expert reply report ..................................................... 3

III.  ARGUMENT ............................................................................................. 4

      A.    Mr. McLean's licensing analysis is untimely. ....................................... 5

      B.    Mr. McLean's analysis relies on documents that were timely requested
            but withheld during fact discovery. ....................................................... 8

      C.    Mr. McLean's reliance on unproduced material was not substantially
            justified or harmless. .............................................................................. 9

IV.   CONCLUSION ......................................................................................... 13

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E
sf-5491911

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beller ex rel. Beller v. United States*,
  221 F.R.D. 689 (D.N.M. 2003) ............................................................... 8

*Charter Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, L.P.*,
  2016 WL 5921062 (C.D. Cal. 2016) ....................................................... 7

*Goodman v. Staples The Off. Superstore, LLC*,
  644 F.3d 817 (9th Cir. 2011) .............................................................. 9, 10

*Jones v. Travelers Cas. Ins. Co. of Am.*,
  304 F.R.D. 677 (N.D. Cal. 2015) ........................................................ 9, 12

*Keener v. United States*,
  181 F.R.D. 639 (D. Mont. 1998) ............................................................ 8

*Kuklock v. Nevada Dep't of Transp.*,
  No. 3:19-cv-00369-LRH-CLB, 2020 WL 7081582
  (D. Nev. Dec. 2, 2020) ............................................................................ 8

*Plumley v. Mockett*,
  836 F. Supp. 2d 1053 (C.D. Cal. 2010) ................................................. 8

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) .............................................................. 3, 5

*Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry
  First LLC*,
  280 F.R.D. 147 (S.D.N.Y. 2012) .......................................................... 12

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  52 F.4th 1054 (9th Cir. 2022) ................................................................. 5

*United States v. N. E. Med. Servs.*,
  No. 10-cv-01904-CW (JCS), 2014 WL 7208627
  (N.D. Cal. Dec. 17, 2014) ...................................................................... 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) .......................................................... 5, 10

ii

**Statutes**

17 U.S.C. § 504(b) ............................................................................................. 3, 10

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................. 4, 5, 8

Fed. R. Civ. P. 26(a)(2)(D) ...................................................................................... 4

Fed. R. Civ. P. 37(c)(1) ..................................................................................... 5, 10

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E

sf-5491911

## I.    INTRODUCTION

Unsatisfied with the state of play of expert discovery, NFPA sought to change the game in the last inning.  In his reply report, NFPA's damages expert, Justin McLean, purports to offer an entirely new damages analysis, based on documents that NFPA repeatedly refused to produce during fact discovery.  He offers that new analysis despite a Court order limiting any reply report to rebuttal of UpCodes' expert's opinion on a different issue—and despite NFPA's refusal to produce in discovery the very documents on which Mr. McLean now relies.

Specifically, Mr. McLean purports to opine, for the first time on reply, that UpCodes' profits from posting laws that adopt NFPA's model codes include the licensing fees that it supposedly should have paid NFPA.  That analysis is inappropriate both because it is based on materials that UpCodes requested in discovery and NFPA refused to produce, and because it is outside of the scope of what the Court's order said NFPA could present on reply.  If NFPA wanted to quantify its supposed lost licensing revenue, it was obligated to do so in its opening damages expert report, not sandbag UpCodes with an entirely new analysis on reply based on documents that UpCodes had never seen before.  Mr. McLean's licensing analysis should therefore be stricken, pursuant to Rule 37.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    NFPA's refusal to produce license agreements

This is a copyright infringement case.  NFPA claims that UpCodes infringes NFPA's copyrights in its model codes by posting laws that have adopted those model codes online, while UpCodes believes that NFPA cannot use copyrights in model codes to block others from speaking the law.  Anticipating that NFPA would rely on its license agreements in attempting to show damages, UpCodes' very first set of document requests asked NFPA to produce all of its licenses related to the model codes at issue.  *See* Bennett Decl. ¶ 2, Ex. 1 (Request for Production ("RFP") No. 28 (seeking "[a]ll documents and communications related to licensing of the

Works in Suit, ***including all licenses*** to make and sell copies or derivative works of the Works in Suit") (emphasis added)).  NFPA responded with objections and an offer to meet and confer.  Bennett Decl. ¶ 3, Ex. 2 (NFPA's response to RFP No. 28).

On February 4, 2022, NFPA made a production consisting of documents that it had previously produced in a similar copyright case against a different defendant.  Bennett Decl. ¶ 4.  That production included around sixty license agreements, all from 2014 or before—the vast majority of which were permissions to use tables or select portions of the 2014 National Electrical Code.  *Id.*  On September 13, 2022, counsel for UpCodes emailed counsel for NFPA to follow up on its production of license agreements.  Bennett Decl. ¶ 5, Ex. 3.  NFPA's counsel responded that it had not produced its full set of license agreements and would not agree to produce any additional licenses.  It claimed that it had produced license agreements only in response to UpCodes' separate production request seeking all documents produced in the other copyright case—not in response to its production request in this case seeking license agreements.  *Id.* at 10.  UpCodes followed up before the close of the fact discovery period, both by email and by video conference, several times with NFPA, requesting that NFPA produce its license agreements and informing NFPA that if it did not produce them, it could not rely on those license agreements as part of expert discovery.  *Id*. at 3, 6–10.  NFPA continued to refuse to produce its licenses and said that it would oppose any motion to compel that UpCodes might bring as too late, given that the motion to compel deadline had passed.  *Id.* at 1–3.  NFPA never produced any additional license agreements during the fact discovery period.  *Id.* at 2.

**B.    NFPA's opening reports did not include licensing revenue as an element of damages**

Copyright law allows copyright owners to seek damages in the form of both their own lost profits and the alleged infringer's profits related to the infringement.

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E
sf-5491911

1    NFPA served two opening reports related to damages.  Bennett Decl. ¶ 6.  With

2    respect to alleged infringer's profits, both focused on what Mr. McLean dubbed

3    UpCodes' "receipts": (1) money from investors and (2) UpCodes' total revenues.

4    Bennett Decl. ¶ 6; *see, e.g.*, *id.* Ex. 4 (McLean Opening Report) at 67.  The result

5    was a total infringer's profits number of ███████████.  *Id.*  But, although Mr.

6    McLean noted in his opening reporting that UpCodes had also avoided paying

7    license fees, Mr. McLean did not quantify those avoided fees.  Bennett Decl. ¶ 6.

8    And, while UpCodes' expert did discuss damages issues in his opening report and

9    the case schedule did allow for rebuttal reports, NFPA decided not to serve any. *Id*

10   at ¶ 7.

11              **C.      NFPA's improper expert reply report**

12          The case schedule in this litigation did not originally provide for expert reply

13   reports.  However, given the burden-shifting framework for damages based on the

14   infringer's profits under the Copyright Act—requiring the alleged infringer to

15   provide an apportionment analysis to the extent it contends that elements of its

16   profits are attributable to factors other than the copyrighted works at issue—the

17   Parties agreed to seek an extension to the expert discovery schedule that allowed

18   NFPA to serve ***limited*** reply reports.   The Parties' stipulation provided that "NFPA

19   would be permitted to serve expert reply report(s) limited to replying to those

20   opinions in UpCodes' expert rebuttal report(s) related to Defendants' 'deductible

21   expenses and the elements of profit attributable to factors other than the

22   copyrighted work[s].'"  ECF No. 83 at 4 (quoting 17 U.S.C. § 504(b)); *see also*

23   *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("Section

24   504(b) creates a two-step framework for recovery of indirect profits: 1) the

25   copyright claimant must first show a causal nexus between the infringement and the

26   gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden

27   of apportioning the profits that were not the result of infringement.") (cleaned up).

28   The Court granted the Parties' request and extended the expert discovery schedule,

3

1    permitting NFPA to file limited expert reply reports.  ECF No. 84.

2        Despite these agreed-upon limitations, on March 10, 2023, NFPA served the

3    expert reply report of Justin McLean, which included an entirely new analysis.  Mr.

4    McLean argued for the first time in his reply that UpCodes' "profits" from the

5    alleged infringement should be deemed to include not only its investment funding

6    and revenues (as Mr. McLean had opined in opening), but also the money that

7    UpCodes would have paid NFPA had it sought a license.   Bennett Decl. ¶ 8, Ex. 5

8    (McLean Reply Report) at 15–21.  Not only was that opinion not within the scope

9    of the Parties' agreement regarding permissible reply reports—indeed, it was a new

10   damages analysis rather than *any* sort of reply—but it was also based on the very

11   licensing documents that UpCodes had asked for (multiple times) in discovery, but

12   that NFPA had refused (multiple times) to produce.  Bennett Decl. ¶ 5.

13       Accordingly, on March 12, 2023, UpCodes informed NFPA that it intended

14   to file a motion to strike the portions of Mr. McLean's report relying on NFPA's

15   license agreements and requested to meet and confer.  Bennett Decl. ¶ 9, Ex. 6.

16   The Parties met and conferred several times via email and video conference.  *Id.*

17   While NFPA produced two additional licenses from two more licensees that offer

18   NFPA's model codes to their online subscribers (so-called "aggregators"), it

19   refused to withdraw the relevant portion of Mr. McLean's report.  *Id.* ¶¶ 9–10, Ex. 6

20   at pp. 1–2.  It still has not produced all prior versions of the few licenses it did

21   produce (although it has offered to produce some of them), or licenses from any

22   entity other than an aggregator.  *Id.* ¶ 11.  This motion followed.

23   **III.   ARGUMENT**

24       Under Federal Rule of Civil Procedure 26, NFPA was required to disclose its

25   experts' testimony "at the times and in the sequence that the court orders."  *See* Fed.

26   R. Civ. P. 26(a)(2)(D).  But NFPA didn't do that.  Instead, it waited until it served

27   its reply report to disclose expert testimony that should have been disclosed in its

28   opening report.  Even worse, the new testimony that NFPA disclosed was based on

4

1  documents that had been requested, but not produced, during fact discovery.  Both

2  NFPA's failure to abide by the Court's expert schedule and its failure to produce

3  the documents it relies upon justifies exclusion of NFPA's license-related opinions.

4    Under Rule 37, NFPA may not rely on expert testimony or documents

5  disclosed after the relevant deadlines unless NFPA's "failure was substantially

6  justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1); *see also Unicolors, Inc. v.*

7  *H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1072–73 (9th Cir. 2022) ("Rule 37

8  provides that a party who fails to disclose expert testimony in compliance with Rule

9  26 is not allowed to use that witness to supply evidence at a trial, unless the failure

10  was substantially justified or is harmless.") (cleaned up); *Yeti by Molly, Ltd. v.*

11  *Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives

12  teeth to these requirements by forbidding the use at trial of any information required

13  to be disclosed by Rule 26(a) that is not properly disclosed.").  NFPA has the

14  burden of showing substantial justification or harmlessness, and it cannot meet that

15  burden here.  *See Unicolors, Inc.*, 52 F.4th at 1073.

16    **A.    Mr. McLean's licensing analysis is untimely.**

17    Given NFPA's burden of proof under the Copyright Act, Mr. McLean's

18  license-based damages analysis should have been made in his opening report.  The

19  Copyright Act establishes a specific burden-shifting framework that applies where a

20  plaintiff seeks a defendant's profits:  First, the plaintiff must show the defendant's

21  gross revenues that it seeks, as well as a causal nexus between those gross revenues

22  and the alleged infringement.  Second, the defendant must show any deductible

23  expenses from the gross revenues that the plaintiff identified, as well as elements of

24  the gross revenues identified by the plaintiff that the defendant believes are

25  attributable to factors other than the alleged infringement.  *See Polar Bear Prods.,*

26  *Inc.*, 384 F.3d at 711.  That is, once the plaintiff has put forward a gross revenue

27  figure, the defendant has the opportunity to show that that figure should be reduced,

28  both because the defendant incurred costs and because some of the gross revenue

1  that the plaintiff identified can be attributed to things other than copyright

2  infringement.

3       In light of that framework, UpCodes and NFPA reached agreement—which

4  the Court approved in an order—on a specific sequence of expert reports:

5       (1) First, NFPA would include in its opening reports analysis of gross

6  revenues causally linked to the alleged infringement (i.e., Step One of the damages

7  analysis);

8       (2) Second, UpCodes would include in its rebuttal reports both rebuttal of

9  NFPA's expert and any affirmative analysis of deductible expenses and

10  apportionment of the revenues that NFPA previously identified (i.e., Step Two of

11  the damages analysis); and

12       (3) Third, NFPA would be allowed to serve reply reports "limited to replying

13  to those opinions in UpCodes' expert rebuttal report(s) related to Defendants'

14  deductible expenses and the elements of profit attributable to factors other than the

15  copyrighted works" (i.e., limited to rebutting UpCodes' analysis of Step Two).

16  *See* Stipulation (Dkt. 83) at 4; *see also* Order (Dkt. 84).

17       NFPA justifies including Mr. McLean's licensing analysis only in its reply

18  report by claiming that it is proper rebuttal to UpCodes' expert's analysis of

19  apportionment and deductible expenses.  It isn't.  It is an entirely new form of

20  damages analysis, which significantly ***increases*** the damages that NFPA claims

21  based on UpCodes' profits.  A proper rebuttal would be to say that UpCodes'

22  expert had included deductions from gross revenues that were not allowed (i.e., that

23  certain costs weren't allowable under the Copyright Act) or that UpCodes had erred

24  when it argued that certain of the revenues that NFPA had identified in its opening

25  brief should be attributed to factors other than the alleged infringement.  But that

26  isn't what Mr. McLean argues in his licensing analysis.  Instead, he argues that

27  what he dubs "avoided licensing costs" are "a measure of incremental profits," as

28  well as a "measure of NFPA's lost profits from UpCodes' unlicensed use of its

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E

sf-5491911

standards." *See* McLean Reply Report at 14. But NFPA's lost profits analysis and the total incremental profits to UpCodes are both issues on which NFPA bears the burden of proof—they relate to Step One of the damages analysis, not Step Two—and therefore had to be addressed in Mr. McLean's opening report, not on reply. Mr. McLean opens with ███████ and concludes his reply with an additional ███████. That he somehow ends up with a ***higher number in rebuttal*** is proof that it is improper.

To see that avoided licensing costs (and lost licensing profits) are issues that are considered part of the plaintiff's burden to show gross revenues caused by the infringement, one need only look to NFPA's own case law. As part of the Parties' meet and confer efforts, UpCodes asked NFPA if it had any authority for the proposition that avoided licensing revenue was an issue relevant to deductible expenses or apportionment—as opposed to gross revenues or lost profits. Bennett Decl. ¶ 9, Ex. 6 at 14. NFPA did not provide any, but it did cite *Charter Sch. Capital, Inc. v. Charter Asset Mgmt. Fund, L.P.*, 2016 WL 5921062, at *3 (C.D. Cal. 2016). Notably, *Charter School Capital* did ***not*** say that avoided licensing costs should be considered as part of the apportionment or deductible expenses analysis. Instead, that case found that, in appropriate circumstances, avoided licensing costs could be considered as part of the defendant's gross revenues—i.e., as part of ***Step One*** of the damages analysis. *Id.* at 12–13. *Charter School Capital* therefore confirms that, to the extent NFPA wanted to rely on avoided licensing costs, it was obligated to present that opinion in its opening report, not wait until reply.

NFPA tries to get around that obligation by claiming that Mr. McLean's licensing opinion is broadly responsive to UpCodes' contention that, after properly apportioning the revenue that NFPA identified in its opening report and accounting for deductible expenses, UpCodes' profits are negative. NFPA has said that adding in avoided licensing costs shows that the negative profit result "makes no sense."

Bennett Decl. ¶ 9, Ex. 6 at 10.  But NFPA had the burden of identifying the total gross revenue at issue in its opening report (and, indeed, NFPA *did* include in its opening report the fact that UpCodes had avoided licensing fees, although it didn't include them as part of its gross revenue calculation, or even say how much in fees UpCodes had avoided), and Mr. Kidder's report was limited to apportionment of the revenue that NFPA previously identified.  It is therefore not proper rebuttal to claim that Mr. Kidder failed to consider additional revenues (in the form of avoided licensing costs) that NFPA had the burden of identifying in its opening report but chose not to.  *See, e.g.*, *Kuklock v. Nevada Dep't of Transp.*, No. 3:19-cv-00369-LRH-CLB, 2020 WL 7081582, at *2 (D. Nev. Dec. 2, 2020) ("Evidence is 'rebuttal' evidence when it is 'intended *solely* to contradict or rebut evidence on *the same subject matter* identified by another party . . . .'") (quoting Rule 26(a)(2)(D)(ii)) (emphasis added).  By agreeing that NFPA could submit a true rebuttal on the issues on which *UpCodes* has the burden of proof, UpCodes did not agree that NFPA could correct omissions from NFPA's opening report.  Mr. McLean's licensing opinion should be excluded.  *Id.* at *4-5 (striking sections of expert report that exceed permissible supplementation under Rule 26); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) ("supplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement'"); *Keener v. United States*, 181 F.R.D. 639, 642 (D. Mont. 1998) (precluding party from relying on opinions expressed in untimely "supplemental" expert report); *Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 695 (D.N.M. 2003) (same).

### B.   Mr. McLean's analysis relies on documents that were timely requested but withheld during fact discovery.

Even if Mr. McLean's analysis had been timely proffered, it would still need to be stricken because it relies on evidence that was timely requested, but not produced, during the fact discovery period.  There can be no dispute that UpCodes

requested the license agreements, explicitly, in a document request served well before the relevant deadline; indeed, UpCodes requested NFPA's licenses in its very first set of document requests. Bennett Decl. ¶ 2, Ex. 1. Nor can there be any dispute that UpCodes followed up before the close of fact discovery, via email and videoconference, with NFPA reiterating UpCodes' request for licenses. *Id.* ¶ 5, Ex. 3. Nor can there be any dispute that NFPA refused to produce those licenses before the close of fact discovery. *Id.*

Having made that choice, NFPA was obligated to live with it—not wait until both fact discovery and most of ***expert*** discovery was over before changing its mind. *See Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D. 677, 682–83 (N.D. Cal. 2015) (excluding portions of expert reports based on unproduced documents); *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) ("Rule 37 gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed.") (cleaned up)

During the Parties' meet and confer efforts, NFPA justified its actions by claiming that it thought it and UpCodes had reached a compromise with respect to RFP Number 28, whereby NFPA would produce certain licensing related documents, but not the licenses themselves. Bennett Decl. ¶ 9, Ex. 6 at 12–13. No such agreement existed. *Id.* ¶ 5, Ex. 3. But even if it had, that wouldn't help NFPA. When Parties reach compromises that allow one party to continue to stand on its objections with respect to certain documents, that means those documents are not a part of the case. It does not give the party in possession of the documents *carte blanche* to sandbag the requesting party with an expert analysis that relies on those same documents after the deadline for fact discovery had long passed.

### C. Mr. McLean's reliance on unproduced material was not substantially justified or harmless.

To avoid exclusion, NFPA has the burden to demonstrate that its failure to timely produce the license agreements and Mr. McLean's analysis was substantially

justified or harmless.  *See Yeti by Molly*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). NFPA cannot do so.  Because the exclusionary remedy under Rule 37 is "self-executing," NFPA's inability to show substantial justification or harmlessness warrants exclusion of Mr. McLean's analysis.  *See Goodman,* 644 F.3d at 827 (Rule 37's exclusion sanction "is a self-executing, automatic sanction designed to provide a strong inducement for disclosure") (cleaned up).

NFPA has offered no justification for its failure to timely produce either the licenses or its expert's analysis of those licenses.  The license agreements—including those Mr. McLean relied upon, dated early 2022—have always been within NFPA's possession, custody, or control, and the Copyright Act states explicitly that NFPA has the burden of showing UpCodes gross revenues causally linked to the infringement and NFPA's lost profits.  17 U.S.C. § 504(b).  There is no reason why NFPA could not have produced the license agreements before the fact discovery cutoff or included Mr. McLean's licensing analysis in its opening report.  NFPA simply didn't want to.

Further, NFPA's failure to comply with its discovery obligations is far from harmless.  In deciding whether a party's failure to comply with its discovery obligations was harmless, some courts consider the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *United States v. N. E. Med. Servs*., No. 10-cv-01904-CW (JCS), 2014 WL 7208627, at *7 (N.D. Cal. Dec. 17, 2014) (cleaned up).  Some courts also consider whether there was bad faith or willfulness involved in the nondisclosure.  *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 2895503, at *6 (D. Ariz. July 9, 2021).

All factors weigh in favor of exclusion:

<u>Surprise and ability to cure the surprise</u>:  Because UpCodes repeatedly requested that NFPA produce its license agreements, and NFPA repeatedly refused, UpCodes was surprised when NFPA produced them and a corresponding expert analysis for the first time in the expert's reply report.  Nor is there a way to cure UpCodes' surprise.

NFPA has claimed that, because it has now produced two additional license agreements with aggregators, any surprise has been cured.  Not so.

First, if NFPA was going to rely on license agreements, UpCodes would be entitled to many more agreements than the ones NFPA (belatedly) produced. NFPA produced only its current license agreements with certain aggregators.  It did not produce any prior versions of those same license agreements.  Although NFPA has recently offered to produce aggregator licenses that were in effect when NFPA claims UpCodes first posted laws adopting NFPA codes in April 2021, it has not agreed to produce licenses with any entity other than aggregators, even though NFPA admits that such other license agreements exist.  Bennett Decl. ¶ 11.  NFPA claims that none of its license agreements with entities other than aggregators could be comparable to a theoretical license with UpCodes because they do not involve online display or distribution.  *Id.* ¶ 9, Ex. 6 at 1–2.  But UpCodes should not be required to take NFPA's word that there are no aspects of those licenses that are comparable.  If NFPA was going to rely on any of its licenses, it should have produced all of them (at least for a reasonable time period).

Second, NFPA has deprived UpCodes of the ability to adequately analyze and interrogate the license agreements it did produce.  By waiting until its reply expert report to introduce the documents and raise an entirely new damages analysis, NFPA has deprived UpCodes of the opportunity to engage in any fact discovery related to those licenses.  During meet and confer, NFPA has said that UpCodes had the opportunity to ask NFPA 30(b)(6) witness, Jim Pauley, about the licenses.  But UpCodes was unable to put any recent license agreement in front of

11

1  Mr. Pauley during his deposition, limiting UpCodes' ability to question Mr. Pauley
2  on the details of particular license agreements or the reasons behind particular
3  provisions.  Further, had UpCodes known that the license agreements were going to
4  be part of the case, it would have sought other depositions, either of NFPA
5  employees who actually negotiated the licenses (Mr. Pauley did not) or depositions
6  of the licensees' themselves.  It would also have had the chance to request the
7  production of other documents, like the relevant negotiation documents or the
8  licensees' agreements with other organizations that develop model codes.

9      Indeed, courts have rejected the exact argument NFPA makes now.  In *Jones*,
10  for example, the party produced the documents on which the expert report was
11  based two weeks before opening reports were due and claimed that that left the
12  other side's experts plenty of time to analyze those documents in their rebuttal
13  reports.  But the court excluded the expert's analysis anyway, explaining that "even
14  though "expert discovery has not yet concluded, the experts are in effect locked-in
15  to the factual record as of the time fact discovery closed." *Jones*, 304 F.R.D. at 682
16  (cleaned up).  Therefore, the other party was prejudiced because it "could not test
17  the factual basis for the newly amended contentions by conducting additional
18  discovery." *Id.*; *see also Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v.*
19  *Coventry First LLC,* 280 F.R.D. 147, 160 (S.D.N.Y. 2012) (excluding an expert
20  report based on a damages theory not disclosed in interrogatory responses until
21  after the close of fact discovery because "Plaintiffs effectively deprived Defendants
22  of the tools necessary to challenge the underlying assumptions of Plaintiffs'
23  expert").

24      <u>Trial disruption</u>:  Because NFPA's failure to timely produce the license
25  agreements and Mr. McLean's analysis can be remedied only through reopening
26  fact discovery and allowing for further expert discovery, trial would be disrupted.
27  As described above, this would involve seeking documents related to the license
28  agreements, including possibly from third parties; pursuing additional depositions;

and serving new expert analysis.[1]  Reopening discovery now—or even after the merits issues have been decided, if they are decided against UpCodes—would require pushing back the trial date.

Importance of the analysis:  NFPA itself must have concluded that the license agreements and analysis were not of great importance to their case, given its refusal to produce the agreements or provide the analysis in its experts' opening reports. Allowing an analysis that NFPA can point to for an additional ███████ in damages, however, would be highly prejudicial to UpCodes.

Explanation for non-disclosure:  NFPA has not offered any explanation for non-disclosure.

Bad faith or willfulness:  When UpCodes reiterated its request for license agreements prior to the close of fact discovery, it specifically raised its concerns that NFPA would attempt to introduce expert analysis based on license agreements that UpCodes did not have.  Bennett Decl. ¶ 5, Ex. 3 at 3.  NFPA not only did exactly that, but it did it on reply.  UpCodes therefore believes that the Court may infer that NFPA's conduct was, at a minimum, willful.

## IV.  CONCLUSION

Having decided not to produce license agreements during the fact discovery period, and having decided not to conduct a lost licensing revenue analysis in its opening reports, NFPA must now live with those decisions.  Mr. McLean's licensing opinion should be excluded.

---

[1] That the Parties have agreed to push back the summary judgment schedule and allow for another round of supplemental expert reports is irrelevant.  Those expert reports are limited to updating existing analyses with new data.  Here, on the other hand, UpCodes' expert would have to engage in new analysis of new documents and testimony that UpCodes does not have.

1   Dated:  April 26, 2023                     MORRISON & FOERSTER LLP

2

3                                  By: */s/ Allyson R. Bennett*

4                                    ALLYSON R. BENNETT

5                                    *Attorneys for Defendant*
                                      UPCODES, INC., SCOTT

6                                    REYNOLDS, and GARRETT
                                    REYNOLDS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E

sf-5491911

1    **<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that on April 26, 2023 the within document was filed with

3    the Clerk of the Court using CM/ECF which will send notification of such filing to

4    the attorneys of record in this case.

5                                                    */s/ Allyson R. Bennett*

6                                                    Allyson R. Bennett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STRIKE THE REPLY EXPERT REPORT OF JUSTIN MCLEAN
CASE NO. 2:21-CV-05262-SPG-E
sf-5491911