**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>UPCODES, INC., SCOTT REYNOLDS, and GARRETT REYNOLDS,<br><br>　　　　　　　Defendants. | Case No. 2:21-cv-05262-SPG-E<br><br>**ORDER RE: UPCODES' MOTION TO STRIKE PORTIONS OF THE REPLY EXPERT REPORT OF JUSTIN MCLEAN AND NFPA'S CONDITIONAL CROSS-MOTION FOR ALTERNATIVE RELIEF**<br><br>**[ECF NOS. 111, 119]** |
| UPCODES, INC.,<br><br>　　　　　Counterclaim Plaintiff,<br><br>　v.<br><br>NATIONAL FIRE PROTECTION ASSOCIATION, INC.,<br><br>　　　　　Counterclaim Defendant. | |

　　　Before the Court is Defendants and Counterclaim Plaintiff UpCodes, Inc., Scott Reynolds, and Garrett Reynolds's (collectively, "UpCodes") motion to strike portions of Plaintiff and Counterclaim Defendant National Fire Protection Association, Inc.'s ("NFPA") expert report pursuant to Federal Rule of Civil Procedure 37. (ECF No. 111). NFPA opposes and conditionally moves to strike portions of UpCodes' expert rebuttal

report under Rule 37. (ECF No. 119). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); Central District of California Local Rule 7-15. The Court rules as follows:

## I. BACKGROUND

This is a copyright infringement case. NFPA claims that UpCodes infringes NFPA's copyrights in its model codes by posting laws that have adopted those model codes online, while UpCodes believes that NFPA cannot use copyrights in model codes to block others from speaking the law.

### A. Discovery Issues

During discovery, UpCodes requested NFPA to produce its licenses related to the model codes at issue. *See* (ECF No. 111-1 ("Bennett Decl.") ¶ 2, Ex. 1 (Request for Production ("RFP") No. 28 (seeking "[a]ll documents and communications related to licensing of the Works in Suit, including all licenses to make and sell copies or derivative works of the Works in Suit"))). NFPA responded with objections and an offer to meet and confer. (Bennett Decl. ¶ 3, Ex. 2 (NFPA's response to RFP No. 28). The parties dispute whether UpCodes continued to pursue NFPA's commercial license agreements. UpCodes claims it was "clear early on that it sought all NFPA licenses." (ECF No. 128 at 10 (citing Bennett Decl., Ex. 6 at 13–15)). Conversely, NFPA asserts that UpCodes clarified that its RFP request was specific to NFPA's "licensing policy" and that the parties agreed NFPA could respond to an interrogatory in lieu of producing commercial licenses. (ECF No. 119-1 ("Ehler Decl.") ¶¶ 5–11, Exs. 4–7)

On February 4, 2022, NFPA produced a set of documents that it had previously produced in a similar copyright case against a different defendant. (Bennett Decl. ¶ 4). That production included around sixty license agreements, all from 2014 or earlier. (*Id.*). On September 13, 2022, counsel for UpCodes emailed counsel for NFPA to follow up on its production of license agreements. *See* (Bennett Decl. ¶ 5, Ex. 3; Ehler Decl. ¶ 12). NFPA's counsel responded that it had not produced its full set of license agreements and

would not agree to produce any additional licenses. Several times before the close of the fact discovery period, UpCodes followed up with NFPA, both by email and by video conference, requesting that NFPA produce its license agreements and informing NFPA that, if it did not produce them, UpCodes would object to any reference of the license agreements as part of expert discovery. (Bennett Decl., Ex. 3). According to NFPA, additional search, review, and production at that time would have posed an unnecessary burden on NFPA, as depositions were starting, and the deadlines for seeking additional document discovery had passed. (Ehler Decl. ¶ 13). NFPA's correspondence stated that NFPA "[did not] expect" to "rely on licenses" in its expert reports, and if that changed, NFPA would produce licenses during expert discovery, i.e., "[i]f our experts rely on licenses in forming their opinions." (Bennett Decl., Ex. 3 at 11). NFPA did not produce any additional license agreements during the fact discovery period.

### B. Stipulated Schedule for Expert Reports

The scheduling order in this case did not originally provide for experts to submit reply reports. However, given the burden-shifting framework for damages based on the infringer's profits under the Copyright Act, the parties stipulated to a modified expert discovery schedule that allowed NFPA to serve limited reply reports. (ECF No. 83). Under the Copyright Act, the copyright owner in an infringement action may recover not just actual damages, but also "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Copyright Act imposes a burden-shifting framework for recovering such profits. Under that framework, the copyright owner must "present proof only of the infringer's gross revenue" through the "defendant's receipts" from the "product using the copyrighted work," and then the burden shifts to the infringer to prove expenses and the "portion of the profit, if any, attributable to factors other than infringing the copyright work." 17 U.S.C. § 504(b); Model Civ. Jury Instr. 9th Cir. 17.34 (2022).

The parties' stipulation provided that "NFPA would be permitted to serve expert reply report(s) limited to replying to those opinions in UpCodes' expert rebuttal report(s)

-3-

related to Defendants' 'deductible expenses and the elements of profit attributable to factors other than the copyrighted work[s].'" (ECF No. 83 at 4 (quoting 17 U.S.C. § 504(b)). Because those opinions would not be disclosed until rebuttal, the parties agreed that NFPA's experts could respond to UpCodes' opinions related to apportionment and deductible expenses in reply reports. (*Id.*). The Court granted the parties' request and extended the expert discovery schedule to permit NFPA to file limited expert reply reports. (ECF No. 84).

C.  **Expert Reports**

The parties served their respective opening expert reports on December 16, 2022. Neither side's experts opined on deductible expenses or apportionment in their opening reports. Consistent with the parties' stipulation, those opinions were deferred until rebuttal (for UpCodes) and reply (for NFPA). In his opening report, NFPA's expert, Justin McLean, opined on UpCodes' gross revenues and the causal relationship between UpCodes' infringement and those revenues. (Bennett Decl., Ex. 4 ("McLean Report")). Mr. McLean identified two inflows of cash ███████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████. (McLean Report ¶ 122).[1] Apart from these cash inflows, Mr. McLean also explained that UpCodes ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

---

[1] The parties seek to redact the amounts identified by Mr. McLean, as well as other information in the experts' reports, because the information would disclose both UpCodes' and NFPA's financial information and business strategies. *See, e.g.*, (ECF Nos. 109, 117, 120). Because the relevant portions are narrowly tailored and relate to confidential business and marketing strategies, the Court finds that good cause exists to redact the information. *See Evans v. DSW, Inc.*, No. CV 16-03791 JGB (SPx), 2019 WL 91835, at *3 (C.D. Cal. Jan. 2, 2019); *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." (citation omitted)).

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶ 124). However, Mr. McLean did not quantify
2  those avoided licensing fees. (Bennett Decl. ¶ 6).

3      UpCodes served Mr. Kidder's rebuttal report on February 10, 2023. In that report,
4  Mr. Kidder opined that "UpCodes experienced greater operating expenses attributable to
5  the accused codes than it brought in as gross profit from those codes." (Ehler Decl., Ex. 2
6  ("Kidder Rebuttal") ¶ 113). He concluded that UpCodes' infringement of NFPA standards
7  caused UpCodes to lose money. Mr. Kidder testified at his deposition that he had not
8  considered UpCodes' avoided licensing costs. (Ehler Decl., Ex. 13 at 77:4–12).

9      On March 10, 2023, NFPA served Mr. McLean's reply report. Mr. McLean opined
10 for the first time in his reply that UpCodes' "profits" from the alleged infringement should
11 be deemed to include not only its investment funding and revenues (as Mr. McLean had
12 opined in opening), but also the money that UpCodes would have paid NFPA had it sought
13 a license. (Bennett Decl. ¶ 8, Ex. 5 ("McLean Reply Report") at 15–21). Mr. McLean
14 explained that Mr. Kidder's omission of UpCodes' avoided costs resulted in a calculation
15 that substantially understates the financial benefits UpCodes has obtained by infringing
16 NFPA's standards. (McLean Reply Report ¶¶ 20–21). To illustrate UpCodes' avoided
17 licensing fees, Mr. McLean relied on NFPA's license agreements with two licensed
18 aggregators that provide online access to NFPA standards. (*Id.* ¶ 23). His calculation
19 demonstrated that, as of September 30, 2022, UpCodes had already avoided at least ▓▓▓
20 ▓▓▓ in licensing fees. (*Id.* ¶ 32). Mr. McLean's opinion was based on the licensing
21 documents that UpCodes had asked for in discovery, but that NFPA had refused to produce.
22 (Bennett Decl. ¶ 5).

23     **D.**    **Proposed Remedies and the Instant Motion**

24     Shortly after receiving the licenses and Mr. McLean's reply report, on March 12,
25 2023, UpCodes demanded that NFPA withdraw Mr. McLean's analysis of UpCodes'
26 avoided licensing costs. (Bennett Decl., Ex. 6). In response, NFPA proposed the following
27 three compromises to remedy its late disclosure: First, NFPA agrees to Stipulate that Mr.
28 McLean's analysis would only be offered at trial in rebuttal. This offer was made to obviate

any concerns that NFPA was offering new affirmative testimony or a different claim for damages. Specifically, NFPA offered to stipulate that Mr. McLean's analysis of UpCodes' avoided licensing costs would be offered "only after the close of UpCodes' case and only if Mr. Kidder offers an opinion that fails to account for those costs." (Bennett Decl., Ex. 6 at 3). Second, NFPA produced its operative licenses with aggregator services. (Ehler Decl. ¶19; Bennett Decl. ¶10). NFPA also offered to provide prior versions of those licenses in effect from the start of UpCodes' infringement and to meet and confer about any additional licenses or documents UpCodes might deem relevant. (Bennett Decl., Ex. 6 at 3, 7, 14). NFPA's offer was based on Mr. Kidder's identification of what he may need if he were to respond substantively to Mr. McLean's reply. (Ehler Decl. ¶ 21, Ex. 13 (Kidder Dep. Tr. 124–129)). Third, NFPA offered to delay Mr. Kidder's deposition to allow him more time to analyze the licenses and Mr. McLean's analysis before his deposition, or alternatively to allow Mr. Kidder to submit an additional expert report. (Bennett Decl., Ex. 6 at 7, 14).

On April 5, 2023, this Court granted NFPA's motion to modify the scheduling order to allow for additional discovery. (ECF No. 105). The parties then stipulated to extend the deadline for the parties to exchange updated discovery to April 28, 2023, and the deadline to submit supplemental expert reports to May 10, 2023. (ECF No. 108). Even though Mr. Kidder would have had two months to consider the licensing agreements and Mr. McLean's apportionment analysis, UpCodes did not let Mr. Kidder opine on the avoided costs or otherwise respond to the merits of Mr. McLean's apportionment analysis. Instead, UpCodes insisted that Mr. McLean's analysis should be excluded. Thus, on April 26, 2023, UpCodes moved to strike the portions of Mr. McLean's reply report regarding his licensing analysis pursuant to Federal Rule of Civil Procedure 37. (ECF No. 111 ("Mot.")). On May 12, 2023, NFPA filed an opposition as well as a conditional cross-motion to strike portions of Mr. Kidder's rebuttal expert report that analyzed UpCodes' premium features. (ECF No. 119 ("Opp.")). UpCodes filed its reply and opposition to

NFPA's cross-motion on May 24, 2023. (ECF No. 128). NFPA filed its reply in support of its cross-motion on June 7, 2023. (ECF No. 129 ("NFPA Reply")).[2]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(2) sets forth the procedures for disclosing expert testimony. For an expert who provides a report, the "duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Rule 37, in turn, provides that if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (explaining Rule 37(c)(1) "gives teeth" to the requirements of Rule 26). "Substantial justification implicates the reason for the delay, while harmlessness requires inquiry into resulting prejudice." *Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. SACV 19-835 JVS (DFMx), 2021 WL 5994996, at *2 (C.D. Cal. July 7, 2021) (citing *Yeti by Molly*, 259 F.3d at 1106) (internal quotation marks and alterations omitted).

Moreover, the Court has "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106. In addition to or in lieu of exclusion, a court may impose various other sanctions. Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

---

[2] This Court took the matter under submission pursuant to Local Rule 7-15. (ECF No. 136). On July 26, 2023, during a hearing on UpCodes' motion for summary judgment, the Court shared its tentative decision to deny UpCodes' motion to exclude Mr. McLean's avoided cost analysis. *See* (ECF No. 182). The Court also encouraged the parties to meet and confer to discuss new dates and modifications to the operative scheduling order to allow for limited discovery in light of the Court's tentative decision. (*Id.*).

III. DISCUSSION

    A.    Whether Mr. McLean's Rebuttal Analysis Was Proper

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016) (citation omitted). "In other words, a rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies." *Id.* at *2 (internal quotation marks and alteration omitted). In evaluating whether a party has submitted legitimate rebuttal testimony, courts focus on "(1) the evidence the rebuttal expert purports to contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence." *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6542730, at *4 (C.D. Cal. June 29, 2016) (citation omitted).

In Mr. McLean's opening report, he opined that UpCodes has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" See (Opp. at 12; McLean Report ¶ 124). In Mr. Kidder's rebuttal report, he concluded that UpCodes had actually lost money by infringing NFPA's copyrighted works. (Kidder Rebuttal ¶ 10). Mr. Kidder did not, however, address Mr. McLean's opinion that UpCodes avoided licensing costs. *See* (*id.* ¶ 115). NFPA argues that Mr. McLean's avoided cost analysis and calculation in his reply report was proper because he had to challenge the various flaws in Mr. Kidder's analysis that led to this economically implausible negative-profits conclusion. *See* (*id.* Ex. 3 ¶ 5(b)). Among those flaws, Mr. McLean explained that Mr. Kidder's failure to address the benefit UpCodes gained by avoiding any licensing costs—a benefit Mr. McLean had identified in his opening report and that Mr. Kidder's rebuttal report ignored—"distort[ed]" his "calculation of UpCodes' profits attributable to infringement." (*Id.* ¶ 5(b)(iii)).

1  UpCodes argues that Mr. McLean's avoided costs analysis is not a rebuttal to
2  UpCodes' apportionment and deductible expenses, but is instead an "entirely new form of
3  damages analysis, which significantly *increases* the damages that NFPA claims based on
4  UpCodes' profits." (Mot. at 12 (emphasis in original)). According to UpCodes, a proper
5  rebuttal would have been for Mr. McLean to say that Mr. Kidder erroneously included
6  deductions from gross revenues or that UpCodes erroneously attributed certain revenues to
7  factors other than the alleged infringement. (Mot. at 12). UpCodes further argues that,
8  because NFPA bears the burden of proof as to UpCodes' profits from infringement,[3] the
9  avoided costs calculation must have been addressed in Mr. McLean's opening report, not
10 on reply. The Court agrees.

11 "Using a rebuttal report as a backdoor to introduce analysis that could have been
12 included in the opening report is squarely foreclosed by Rule 26." *City & Cnty. of S.F. v.*
13 *Purdue Pharma L.P.*, No. 18-CV-07591-CRB, 2022 WL 1203075, at *2 (N.D. Cal. Apr.
14 22, 2022); *see also Century Indem. Co. v. Marine Grp., LLC*, No. 3:08-CV-1375-AC, 2015
15 WL 5521986, at *3 (D. Or. Sept. 16, 2015) (Rebuttal testimony "is limited to new
16 unforeseen facts brought out in the other side's case"). Here, pursuant to the parties'
17 stipulation, Mr. Kidder's report was limited to apportionment of the revenue that NFPA
18 identified in its opening expert reports. It is therefore not proper rebuttal for NFPA to claim
19 that Mr. Kidder failed to consider additional revenues (in the form of avoided licensing
20 costs) that NFPA had the burden of identifying in its opening report but chose not to. That
21 Mr. McLean's opening report calculates gross revenue from infringement as ███
22 and his reply report identifies an additional ███ of avoided costs is further proof
23 that the analysis is improper on rebuttal. *See Clear-View Techs., Inc. v. Rasnick*, No. 13-
24 CV-02744-BLF, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) ("Permitting parties to

---

[3] *See also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("Section 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement.").

backdoor affirmative expert testimony under the guise of 'rebuttal' testimony would render Rule 26's limits generally meaningless.").

Mr. McLean's avoided-costs analysis is improper for the additional reason that it was based on material that NFPA withheld during discovery. NFPA argues that the need for Mr. McLean to rely on unproduced license agreements arose for the first time when Mr. Kidder failed to consider the avoided costs in his rebuttal report. The Court disagrees. Mr. Kidder's failure to consider the avoided costs is a product of NFPA's own making. NFPA did not produce the licensing agreements during discovery or as part of Mr. McLean's opening report. Thus, Mr. Kidder could not have considered the impact of licenses that were never produced. NFPA claims that it was permitted to produce the licenses when it did because Rule 26(e) simply requires supplementation "in a timely manner" after learning a prior disclosure was incomplete. (Opp. at 21). However, Rule 26(e) "creates a 'duty to supplement,' not a right." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009). Supplementation "is not a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise its disclosures in light of its opponent's challenges to the analysis and conclusions therein, can add to them to its advantage after the court's deadline for doing so has passed." *Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-CV-04405-HSG, 2020 WL 1325068, at *2 (N.D. Cal. Mar. 20, 2020) (citing *Luke*, 323 F. App'x at 500) (alterations omitted). The record here shows that NFPA should have produced the licensing agreements earlier if it intended to rely on them. Having failed to do so, NFPA cannot now rely on Rule 26(e) to justify its actions. *See also Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983–84 (N.D. Cal. 2014) ("Although Rule 26(e) obliges a party to supplement or correct its disclosures upon information later acquired, this does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." (quotation omitted)).

For these reasons, the Court finds that Mr. McLean's rebuttal analysis of the avoided licensing costs and NFPA's belated disclosure of the licenses underlying that analysis

violates Rule 26's disclosure requirements. As such, the Court must determine whether NFPA's disclosure was either substantially justified or harmless.

### B. Whether NFPA's Disclosure was Substantially Justified or Harmless

Rule 37(c)(1) "was intended to foster stricter adherence to discovery requirements and to broaden the power of the district court to sanction violations of Rule 26." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). No showing of bad faith or willfulness is required. *See id.* ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."). Recognizing exclusion's "unduly harsh" potential, Rule 37 authorizes exclusion only where an untimely disclosure is neither substantially justified nor harmless. Fed. R. Civ. P. 37(c)(1). To determine whether substantial justification and/or harmlessness exist, the court looks to several factors, including "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Orange Cnty. Water Dist. v. Unocal Corp.*, No. SA CV 03-01742-CJC (DFMx), 2018 WL 8799888, at *2 (C.D. Cal. Dec. 20, 2018) (citing *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-1062, 2016 WL 9150622, at *2 (C.D. Cal. June 8, 2016)). Ultimately, "this is an equitable analysis entrusted to the Court's discretion." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017).

NFPA argues that the timing of Mr. McLean's avoided licensing costs analysis was substantially justified because, at a minimum, "reasonable people could differ as to the appropriateness of the contested action." *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, 2014 WL 12577091, at *1-2 (C.D. Cal. Nov. 17, 2014); *see also Lucent Techs. Inc. v. Microsoft Corp.*, NO. 07-CV-2000 H (CAB), 2011 WL 13100711, at *2 (S.D. Cal. May 23, 2011) ("'Substantially justified' does not necessarily mean justified to a high degree but that there is a genuine dispute." (quotation and alteration omitted)). NFPA claims that Mr. McLean's use of the previously undisclosed licenses "became necessary to reply to Mr. Kidder's

erroneous apportionment analysis." (Opp. at 15). However, as explained above, Mr. Kidder's deduction and apportionment analysis was not unanticipated. In fact, NFPA knew that licenses could be relevant: Mr. McLean specifically mentioned avoided license costs in his opening report but chose not to quantify them at the time. *See* (McLean Report ¶ 124). Regardless of what Mr. Kidder would have concluded in his apportionment analysis, the only plausible inference is that Mr. McLean would have provided an analysis of the licenses on reply despite not having done so in his opening report. Though NFPA justifies its actions as "necessary," the circumstances had not changed enough to substantially justify NFPA's last-minute use of the license agreements.

Further, the Court disagrees with NFPA that UpCodes cannot have been surprised by NFPA's late disclosure because it had anticipated this precise scenario. (Opp. at 24). NFPA cites discovery correspondence in which counsel for UpCodes advised NFPA that it "reserve[d] its right to ask the Court to preclude" expert analysis of license terms "on the grounds that the license agreements were not timely produced." (Bennett Decl., Ex. 3 at 4). In response, NFPA "reiterate[d] that it had "no plans to affirmatively rely on the specific terms of a particular license agreement to support its claims" but stated that, if its position were to change, NFPA would produce the licenses upon which it needed to rely. (*Id.* at 5). However, the mere fact that Mr. Kidder ignored Mr. McLean's reference to avoided licensing fees in his apportionment analysis is not a valid basis to open the door for NFPA to produce and rely on undisclosed licenses.

At bottom, NFPA's late disclosure of Mr. McLean's avoided cost analysis was neither justified nor harmless. Nevertheless, "[e]xclusion sanctions are not a foregone conclusion if substantial justification or harmlessness have not been established, however." *Silvagni*, 320 F.R.D. at 242 (citing *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011) ("Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless.")). That is because outright exclusion is widely recognized to be a "harsh" sanction. *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Instead, courts strongly

prefer "to see both sides present to the finder of fact all relevant and material evidence not foreclosed by other rules" and therefore disfavor "sanctions which might prevent all the facts and authorized opinions from being presented." *Lefay v. Lefay*, No. 1:13–cv–01362 AWI MJS HC, 2014 WL 6473725, at *5 (E.D. Cal. Nov. 18, 2014); *see also, e.g.*, *NW Pipe Co. v. DeWolff, Boberg & Assocs., Inc.*, No. EDCV 10–0840–GHK (DTBx), 2012 WL 137585, at *5 (C.D. Cal. Jan. 17, 2012) (finding the "'extremely harsh' remedy of exclusion" was not warranted given "that less drastic sanctions can rectify the prejudice defendant has suffered, as well as the public policy favoring disposition of cases on their merits").

Here, the circumstances warrant a lesser form of sanctions than exclusion. Indeed, NFPA has already offered numerous solutions that can cure the prejudice and surprise to UpCodes. As early as March 31, 2023, NFPA offered the following three remedies: (1) stipulate that Mr. McLean's analysis would only be offered at trial in rebuttal; (2) produce additional licenses; and (3) allow Mr. Kidder to serve a sur-reply. *See* (Bennett Decl., Ex. 6). The Court finds these proposals to be collectively sufficient to remedy any prejudice to UpCodes.

The Court reiterates that if NFPA wanted to recover avoided licensing costs as part of UpCodes' gross revenue caused by its infringement, then Mr. McLean must have provided a calculation of those costs in his opening report. However, that is not the case. Contrary to UpCodes' assertion, Mr. McLean's critiques of Mr. Kidder's analysis did not "grow the pie" of recoverable profits beyond the gross receipts Mr. McLean identified in his opening report.[4] The formula disclosed in Mr. McLean's opening report for calculating gross receipts that are casually linked to the infringement—investment plus revenues—remains the same and represents the ceiling of the gross revenues potentially recoverable as damages. (NFPA Reply at 9). To address UpCodes' stated concern that NFPA

---

[4] The parties have stipulated that NFPA will not pursue as part of its damages under 17 U.S.C. § 504(b) the amounts Mr. McLean calculates as avoided licensing costs. (ECF No. 188).

nonetheless seeks to use Mr. McLean's rebuttal of Mr. Kidder's negative-profits calculation to "grow the pie," the Court will instruct the jury that the parties have stipulated that NFPA does not seek to recover the avoided licensing costs, which will assist in ensuring that the testimony does not lead to a profits recovery that exceeds the "gross revenues damages cap." However, because the Court is concerned that limiting Mr. McLean's testimony on the avoided costs analysis to rebuttal may: (1) be inconsistent with the burden-shifting framework under 17 U.S.C. § 504(b); (2) be inconsistent with the Court's instruction(s), if any, on the calculation of damages and burden-shifting; and (3) result in an expert presentation on these issues that is confusing to the jury, the Court will defer until the Final Pretrial Conference its ruling on whether the proposed remedy of limiting such testimony to rebuttal will be imposed.

Furthermore, given that Mr. Kidder was already scheduled to file a supplemental report following this Court's order extending the discovery deadline, (ECF No. 108), there is no reason the parties could not have agreed to a limited set of discovery that could enable Mr. Kidder to have responded to Mr. McLean's analysis in that disclosure. *See* (Ehler Decl. ¶ 24, Ex. 12 at 1, 8). Even though Mr. Kidder would have had two months to consider the licensing agreements and Mr. McLean's apportionment analysis, UpCodes still refused to let Mr. Kidder opine on the avoided costs he had previously ignored or otherwise respond to the merits of Mr. McLean's apportionment analysis. "When disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery, lesser sanctions and other measures are more appropriate than evidence preclusion." *Kuklock v. Nevada Dep't of Transportation*, No. 3:19-cv-00369-LRH-CLB, 2020 WL 7081582, at *4 (D. Nev. Dec. 2, 2020). NFPA's disclosure was made during the extended expert discovery deadline. (ECF No. 108). Moreover, the Court finds that NFPA's delay can be remedied by a brief extension of the discovery deadline and the opportunity for Mr. Kidder to file a sur-reply. *See Celgene*, 2016 WL 6542730, at *7 (extension of expert discovery to allow party to "sur-rebut" report challenged as improper rebuttal "need not be extensive in light of the

amount of time Defendant has been in possession of [expert's rebuttal] [r]eport and the fact that Defendant has already deposed [expert] at length").

Accordingly, the Court finds that NFPA's proposed remedies regarding discovery are sufficient to render its late disclosure of Mr. McLean's avoided cost analysis harmless such that preclusion is inappropriate at this stage in the proceedings.[5] This conclusion is all the truer given that the current trial is more than four months away.

### C.   NFPA's Conditional Cross-Motion

NFPA has conditionally cross-moved to exclude portions of Mr. Kidder's rebuttal report, but "only if" the Court does not deny UpCodes' motion to strike. *See* (ECF No. 119 at 3). Having denied UpCodes' motion, the Court hereby denies NFPA's conditional motion, too.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** UpCodes' motion to strike Mr. McLean's avoided cost analysis. To cure any prejudice to UpCodes from NFPA's improper disclosure, the Court will: (1) instruct the jury that the parties have stipulated to NFPA not seeking to recover UpCodes' avoided licensing costs; (2) allow Mr. Kidder to file a sur-reply opinion; and (3) allow the parties to propose a schedule modification to allow for limited additional discovery that is narrowly tailored to Mr. McLean's avoided licensing costs analysis. Further, the Court **DENIES** NFPA's conditional cross-motion for alternative relief.

**IT IS SO ORDERED.**

DATED: August 8, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[5] At trial, the jury will be instructed that NFPA does not seek to recover the sums Mr. McLean calculates as avoided licensing costs.