RAGESH K. TANGRI (SBN 159477)
RTangri@mofo.com
JOSEPH C. GRATZ (SBN 240676)
JGratz@mofo.com
HANNAH JIAM (SBN 312598)
HJiam@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants
UPCODES, INC., SCOTT REYNOLDS, AND
GARRETT REYNOLDS

(*Additional counsel listed on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

NATIONAL FIRE PROTECTION ASSOCIATION, INC.,

Plaintiff,

v.

UPCODES, INC., SCOTT REYNOLDS, AND GARRETT REYNOLDS,

Defendants.

Case No. 2:21-cv-05262-SPG-E

**ANTICIPATED TESTIMONY REGARDING OTHER LAWSUITS AND PRO CODES ACT**

Judge: Hon. Sherilyn Peace Garnett
Trial: March 18, 2025

WHITNEY O'BYRNE (SBN 325698)
WOByrne@mofo.com
MARK D. MARCISZEWSKI (SBN 344240)
MMarciszewski@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213-892-5200
Facsimile: 213-892-5454

ROMAN A. SWOOPES (SBN 274167)
RSwoopes@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-813-5600
Facsimile: 650-494-0792

ADITYA V. KAMDAR (SBN 324567)
AKamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202-887-1500
Facsimile: 202-887-0763

Attorneys for Defendants
UPCODES, INC., SCOTT REYNOLDS,
and GARRETT REYNOLDS

Pursuant to the discussion at the February 26, 2025 Pretrial Conference, Defendants provide this statement setting forth the substance of anticipated testimony from Scott Reynolds and Garrett Reynolds regarding other lawsuits and regarding the Pro Codes Act to facilitate further discussion regarding NFPA's Motion in Limine Nos. 1 and 3. Plaintiff has indicated that the proposal set forth herein does not resolve those motions, and that it intends to respond to this statement.

Consistent with the Court's guidance at the February 26, 2025 Pretrial Conference, Defendants' witnesses do not intend to testify regarding the details of what cases have said. In particular, Defendants are mindful of the Court's concerns regarding any discussion of cases addressing copyright validity or prima facie infringement issues, as opposed to fair use issues. Defendants believe it is important that they be able to convey not only that they in fact believed their conduct to be permissible, but the factual events that Defendants experienced that gave rise to that belief. A bare assertion that Defendants had the impression, for unidentified reasons, that what they were doing was permissible will not accurately and credibly convey to the jury that their belief was grounded in facts they had experienced and documents they had read.

They do not need to talk about anything related to copyrightability or copyright validity or merger or prima facie infringement or any other issue on which the Court has already ruled, so long as they can speak factually about the documents and events giving them a basis for believing their conduct to be fair use. And they do not need to go into detail about the specific quotations or analysis or holdings of the documents forming the basis for that belief. They can simply say what happened—they got sued, the court issued an order, the order made them believe their posting of NFPA's material was more likely to be fair use, and a brief factual statement of why.

In addition to willfulness, this testimony is relevant to the jury's decision as

to the amount of statutory damages. As the model jury instructions, to which the parties have agreed, say, both "the circumstances of the infringement" and "whether the infringement was intentional" are factors the jury is to consider. ECF No. 271 (agreed instructions) at PDF page 51. The facts giving rise to Defendants' belief that their conduct was permissible are mitigating circumstances and bolster their testimony that they did not intend to infringe NFPA's copyright, but instead intended to engage in fair use.

Similarly, this testimony bears on "the propriety of the defendant's conduct," which is "relevant to the 'character' of the use" under the first fair use factor. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985). Indeed, courts have held that "the subfactor pertaining to defendants' good or bad faith must be weighed," and regarded it as "error for the district court not to have fully and explicitly considered it." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004). *See also, e.g.*, *F. Marc Schaffel Prods., LLC v. TMZ Prods., Inc.*, No. CV1001306GHKSSX, 2010 WL 11549388, at *3 (C.D. Cal. Dec. 16, 2010) (applying *NXIVM* and finding information regarding the defendant's state of mind relevant to a fair use defense in the context of a discovery dispute).

## I. PROPOSED GUARDRAILS

In order to address the concerns animating NFPA's Motion in Limine Nos. 1 and 3, UpCodes is willing to instruct its witnesses to adhere to the following "guardrails," subject to NFPA opening the door:

1. No quotations from any prior case or court opinion.
2. No discussion of any prior case or court opinion beyond the facts set forth expressly in Part II below.
3. No discussion of a belief that courts have held that material is not copyrightable because it is "the law" or that courts have held that "no one can own the law."

4. No discussion of witnesses' knowledge of any cases or legal theories regarding copyright validity, or attorney argument regarding copyright validity.
5. No discussion of the concept of the public domain or the merger doctrine.
6. No discussion of *Georgia v. Public.Resource.Org* or any other Supreme Court case.
7. No discussion of this Court's order denying NFPA's motion for preliminary injunction.
8. No statement that Defendants sought, received, or relied on the advice of counsel.

## II. BASIS FOR BELIEF THAT DEFENDANTS' CONDUCT WAS PERMISSIBLE

The following sets forth the substance of what Garrett and/or Scott Reynolds would testify to in connection with their basis for believing that their conduct was permissible. This sets forth the entire substance of the testimony on this subject matter. It is organized in a manner intended to allow the Court to see the factual nature of the material presented, and to identify any material that the Court believes provides too much detail.

### A. Cases from before UpCodes began posting the works-in-suit

1. At the time we founded UpCodes, before we posted any codes on our site based on adopted NFPA model codes, we did not think that UpCodes would be infringing any copyrights because we had looked at a case called *Veeck* that led us to believe that what we wanted to do was not copyright infringement.
   a. We read about *Veeck v. Southern Building Code Congress International, Inc.*[1]
   b. The reason that made us think what we wanted to do was OK was that the *Veeck* case involved someone who had posted privately written building

[1] NFPA agrees that UpCodes may offer this testimony. ECF No. 242 at 2.

codes online without permission, and we saw that the court ruled in their favor and had said that was OK in that case.

c. Since we saw that as being like what we wanted to do, that case made us think that what we were doing was OK.

2. We also looked at a case where NFPA had sued Public.Resource.Org that made us think that what we were doing was not copyright infringement.

a. The court issued an order in that case, and we read it when it came out in July of 2018.

b. The reason that made us think what we were doing was OK was that the court in the *Public.Resource.Org* case said in that 2018 order that posting the parts of a privately written standard that people needed in order to understand a jurisdiction's requirements was more likely to be fair use in that case.

c. Since we saw that as being like what we were doing, and since it involved NFPA codes, that made us think that what we wanted to do was more likely to be fair use.

d. (The same court issued another order in 2023, after we began posting NFPA codes, saying that it was fair use in that case for Public.Resource.Org to post NFPA's codes on their website. That made us more confident that what we were doing was fair use.)

3. UpCodes was sued by ICC, which publishes the International Building Code, in 2017.

a. We believe we received a favorable pretrial ruling in the *ICC* case.[2]

b. The court issued an order in that case, and we read it when it came out in May of 2020.

c. We saw that the order said that when we accurately posted ICC materials that were adopted by jurisdictions, that was fair use in that case.

[2] NFPA agrees that UpCodes may offer this testimony. ECF No. 242 at 2.

d. Because what we are trying to do is accurately post NFPA materials that were adopted by jurisdictions, that made us think that what we are trying to do is fair use.

e. That case is still going on, partly because there's a disagreement over whether some of the ICC materials we posted were not posted accurately or were not adopted by jurisdictions.

**B. Cases from after UpCodes began posting some of the works-in-suit**

4. We were sued by FGI, which publishes standards for building healthcare facilities.

a. The court issued an order in that case, and we read it when it came out in June of 2023.

b. We saw that the order said we didn't have to take things down from our website while the case was going on because we were likely to succeed in the case in arguing that what we were doing was fair use in that case.

c. That made us think that what we were doing was more likely to be OK.

d. FGI dismissed the case right after that order came out, so that case is not going on anymore.

5. We were sued by ASTM, which publishes standards for testing and materials related to buildings, among other things.

a. The court issued an order in that case, and we read it when it came out in October of 2024.

b. The order said that we didn't have to take things down from our website while the case was going on because we were likely to succeed in the case in arguing that what we were doing was fair use in that case.

c. That made us think that what we were doing was more likely to be OK.

d. That case is still going on.

**C. Pro Codes Act**

6. In 2022, we saw that a bill was proposed in Congress called the Pro Codes Act.
   a. We saw that NFPA announced it was one of the supporters of that law.
   b. That bill said that standards would retain their copyright protection even if they have been incorporated by reference into a law or regulation, if the standard is available for free on the publisher's website.
   c. The fact that NFPA supported that law made us more confident that what we are doing is OK under current law.
   d. The reason we thought that is because, we thought, why would NFPA be spending so much energy lobbying for this new law if the existing law was enough to stop us from doing what we're doing?
   e. The Pro Codes Act has not been passed by Congress.

Dated: March 5, 2025

MORRISON & FOERSTER LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz

*Attorneys for Defendants*
UPCODES, INC., SCOTT REYNOLDS, AND GARRETT REYNOLDS

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2025, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Joseph C. Gratz*
Joseph C. Gratz