ROSE LEDA EHLER (State Bar No. 296523)
Rose.Ehler@mto.com
JENNIFER L. BRYANT (State Bar No. 293371)
Jennifer.Bryant@mto.com
GRAHAM WYATT (State Bar No. 342809)
Graham.Wyatt@mto.com
JOSEPH N. GLYNN (State Bar No. 337652)
Joseph.Glynn@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687 3702

KELLY M. KLAUS (State Bar No. 161091)
Kelly.Klaus@mto.com
SHANNON C. AMINIRAD (State Bar No. 324780)
Shannon.Aminirad@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077

RACHEL G. MILLER-ZIEGLER (*pro hac vice*)
Rachel.Miller-Ziegler@mto.com
ANDRA LIM (State Bar No. 336265)
Andra.Lim@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500E
Washington, DC
Telephone:   (202) 220-1115
Facsimile:   (202) 220-2300

*Attorneys for National Fire Protection Association, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL FIRE PROTECTION ASSOCIATION, INC.,<br><br>  Plaintiff and Counterclaim-Defendant,<br><br>  v.<br><br>UPCODES, INC., et al.,<br><br>  Defendants and Counterclaim Plaintiffs. | Case No. 2:21-cv-05262-SPG-E<br><br>**NFPA'S OBJECTION TO DEFENDANTS' ANTICIPATED TESTIMONY REGARDING OTHER LAWSUITS AND PRO CODES ACT**<br><br>Judge:  Hon. Sherilyn Peace Garnett<br>Trial Date:  March 18, 2025 |

## I. INTRODUCTION

The Court's March 6 Order on Motions in Limine ("MIL") says "the individual defendants' understanding of copyright law obtained independently without the benefit of legal counsel" and evidence regarding Defendants' own views of the Pro Codes Act could be relevant to rebut NFPA's arguments on willful infringement. Dkt. 295, at 2-3 ("MIL Order"). The Court directed the parties to meet and confer on individual defendants' testimony. *Id*. at 2.

The parties have been meeting and conferring since the February 26 Pretrial Conference. Those discussions highlighted that Defendants' proposed testimony and "guardrails" would not solve the prejudice and juror confusion NFPA's MILs sought to avoid. NFPA accordingly told UpCodes during a March 3 conference that it would drop its willful infringement claim to obviate any argument or evidence regarding caselaw or the Pro Codes Act at trial. Defendants refused that offer and on March 5 filed a proffer of "anticipated testimony" on these issues. Dkt. 288 ("Proffer"). NFPA **will drop its willfulness claim**, and thus the only basis for Defendants to talk about caselaw and the Pro Codes Act is gone.

Defendants' Proffer confirms the dangers of allowing such evidence and argument, and the urgent need for its exclusion in full. The Court told Defendants they faced "an uphill, vertical hill" if they wanted to tell the jury: "Here is my understanding of what [the court in a different] case said" that justifies our conduct. Feb. 26, 2025 Tr. ("Tr.") 47:4-6. Undaunted, Defendants' Proffer seeks to have Scott and Garrett Reynolds do exactly that. The Reynoldses propose to offer a selective, one-sided description of what courts "said" in six opinions, including three opinions in cases where UpCodes was a party and represented by its counsel here, and two other opinions issued while UpCodes was in litigation and represented by its counsel here. Proffer 3-5.

Defendants' proposal is manifestly unfair and prejudicial. It guarantees a "mine field" that could cause the trial to "go awry." Tr. 42:4-6, 46:22-25, 61:23-25.

The Proffer's proposed "guardrails" are nothing of the kind. Even with the "guardrails," the Reynoldses would offer their description of other courts' holdings and facts allegedly similar to those here, and they would do so as to multiple cases where the Reynoldses had "the benefit of legal counsel." MIL Order 2.

Worse still, Defendants say that if "NFPA open[s] the door," the guardrails are gone. Proffer 2. In other words, if NFPA tries to cross-examine them, the Reynoldses, who are not lawyers and who stand on privilege to block discovery of the full scope of what they knew about those other opinions, will freely expound about the caselaw well beyond their Proffer. Defendants' Proffer thus offers NFPA an intolerable choice: (1) stand by while the Reynoldses put on a one-sided, incomplete, and self-serving summary of what courts in other cases have said; or (2) partake in an unfair[1] free-for-all regarding decisions that in many cases contradict the law from the Ninth Circuit and the Summary Judgment Order that control *this* case. Both options guarantee prejudice and juror confusion.

Now that NFPA has agreed to drop willfulness, the Rule 403 balance weighs overwhelmingly for excluding argument and evidence about caselaw and the Pro Codes Act.

Defendants' persistence in trying to get lay testimony about non-controlling caselaw and an unenacted bill before the jury shows why clear rules are needed before the trial starts. NFPA respectfully requests that the Court exclude argument, testimony, or exhibits quoting from, describing, or referencing the caselaw or Pro Codes Act[2] and that it reject Defendants' Proffer.[3]

---

[1] Unfair because of Defendants' use of privilege as sword and shield.

[2] Because NFPA has agreed not to pursue willfulness, MIL No. 3 should be granted in full. *See* MIL Order 3 (allowing Defendants to discuss the Pro Codes Act (but not NFPA's views of the bill) "for the limited purpose of showing defendants' good faith belief . . . to negate willful infringement").

[3] For the Court's convenience, NFPA has attached a proposed order to this Objection, which incorporates NFPA's proposal to exclude willfulness from trial.

-2-	Case No. 2:21-cv-05262-SPG-E
OBJECTION TO DEFENDANTS' ANTICIPATED TESTIMONY RE OTHER LAWSUITS & PRO CODES ACT

## II. DEFENDANTS' PROFFER DOES NOT RESPOND TO THE COURT'S CONCERNS OR OFFER ANY REAL GUARDRAILS

### A. Defendants' Proposal Would Trample On This Court's Prior Rulings And The Court's Role In Determining The Law.

At the Pretrial Conference, the Court noted concerns that discussion of caselaw and the Pro Codes Act threatened not only to undermine the Court's Summary Judgment Order, but also to create a sideshow regarding the law that would be confusing to the jury and usurp this Court's role in setting forth the law that controls this trial. *See, e.g.*, Tr. 42:3-19, 45:10-17, 46:22-47:6, 61:23-62:7. Defendants' Proffer exacerbates those problems.

***Case Law.*** The Reynoldses propose to testify about exactly the matters the Court identified as problematic, i.e., "Here is my understanding of what the case said." Tr. 47:4-6. Thus, Defendants propose to have the Reynoldses tell the jury, for example, that:

- They "looked at a case called *Veeck*," i.e., *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc), the *Veeck* case "involved someone who had posted privately written building codes online without permission," and "the court ruled in their favor." Proffer 3-4.

- They "looked at a case where NFPA had sued Public.Resource.Org," i.e., *American Society for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437 (D.C. Cir. 2018), that case "said . . . that posting the parts of a privately written standard that people needed in order to understand a jurisdiction's requirements was more likely to be fair use," and "[t]he same court issued another order in 2023 . . . saying that it was fair use in that case for Public.Resource.Org to post NFPA's codes on their website." Proffer 4.

- "UpCodes was sued by ICC," i.e., *International Code Council, Inc. v. UpCodes, Inc.*, 2020 WL 2750636 (S.D.N.Y. May 27, 2020), "we read" the court's May 2020 order, and that order "said that when we accurately posted ICC materials that were adopted by jurisdictions, that was fair use." Proffer 4; *see also id.* at 5 (opining about why the "case is still going on").

Defendants' assertion that the Reynoldses would "simply say what happened" grossly understates the import of the proposed testimony. Proffer 1. The statements above and others the Reynoldses want to make "get[] into the specifics of case law": who the parties were, what the Reynoldses want to say about challenged conduct,

what the Reynoldses want to say about what the courts held, and the Reynoldses' views on why cases are or are not ongoing. Tr. 42:7-11. The proposed testimony consists of the Reynoldses' claimed "understanding of the case[s]" and involve purported "legal conclusions." *Id.* at 42:11-14.

The unfair prejudice to NFPA and juror confusion this testimony would create are manifest. Jurors presented with the claim the Reynoldses did not think they would infringe because the court in a case called *Veeck* ruled in favor of "someone who had posted privately written building codes online without permission," Proffer 3-4, obviously would have difficulty disentangling the significance of that testimony from the fact that, in this case, the only liability question for the jury is whether Defendants have met their burden on their affirmative defense of fair use. *See* Tr. 27:23-28:8 (Court noting its "clear rulings" at summary judgment and risk of "trampling all over" those rulings through discussion of "the law and who owns the law"). And testimony purporting to describe what other courts did, including as to fair use, in cases where UpCodes was a defendant (or NFPA a plaintiff) clearly risks the jury believing that other courts have decided the fair use questions at issue in this case—with different facts and different law—and simply deferring to how the Reynoldses characterize those cases.

Because the Reynoldses seek to highlight facts of cases that, in their view, are similar to this one, NFPA would have no choice but to present its own evidence to undermine those analogies and the conclusions the Reynoldses purport to have drawn from the cases—including by cross-examining Defendants on the aspects of those cases that are unfavorable to them (e.g., that *Public.Resource.Org* involved a non-profit) and asking Defendants about their understanding of the directly binding caselaw that they do not mention (i.e., the Ninth Circuit's decision in *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516 (9th Cir. 1997), and this Court's Summary Judgment Order). This testimony will necessarily create a distracting and confusing sideshow about the state of the law

regarding IBR and government edicts, threatening this Court's "control of the case." Tr. 45:10-12.

***Pro Codes Act.*** At the Pretrial Conference, the Court indicated that testimony about the Pro Codes Act could lead to juror confusion. Tr. 62:3-4. Defendants' Proffer on the Pro Codes Act (filed the evening before the MIL Order) does not minimize the risk of juror confusion, and makes clear why, with willfulness gone, any evidence about the Pro Codes Act should be excluded under Rule 403.

The Proffer says the Reynoldses will testify that NFPA supported the Pro Codes Act; that the fact of this support purportedly reinforced the Reynoldses' belief that they were acting lawfully because NFPA would not "spend[] so much energy lobbying for this new law if the existing law was enough to stop us from what we're doing"; and that the Pro Codes Act was not passed. Proffer 6.

The fundamental premise of that testimony is what NFPA thought about the Pro Codes Act—i.e., that it was a statute that NFPA wanted passed because "existing law was [not] enough to stop [Defendants] from doing what [they were] doing." Proffer 6. The MIL Order now makes clear this is testimony Defendants may not present.[4] Dkt. 295, at 3. Even as to Defendants' own knowledge about what the Pro Codes Act said, the evidence has no relevance, particularly now that willfulness is out of the case. Even if Defendants say nothing about NFPA, testimony about an unenacted bill could cause jurors to be confused about what law controls this case and whether NFPA took a position on the bill.

### B. Defendants' Proffer Makes Clear The Sword-Shield Problems With Defendants' Proposed Testimony.

The Court expressed concern that allowing Defendants to testify about caselaw could run afoul of the sword-shield doctrine, given Defendants' assertion of

---

[4] Defendants filed their Proffer on the evening of March 5, in the midst of the parties filing a large number of pretrial documents. All parties understand the Court may not have seen the Proffer from this mass of filings before issuing the MIL Order.

privilege to block inquiry regarding what Defendants knew from their counsel about the caselaw. *See, e.g.*, Tr. 43:5-6 (details of cases "include advice from counsel which NFPA was not allowed to pursue"); *id.* at 42:11-19 ("They're not lawyers. They're not judges. They don't know. It's just kind of them spouting off what they think the law was."). The Proffer only highlights why discussion of caselaw must be excluded under this doctrine.

To start, with one exception, *all* of the decisions that Defendants propose discussing were issued *after* Defendants retained their current counsel—and, indeed, in the three of those cases in which UpCodes is the defendant, UpCodes is represented by the same counsel as Defendants are here.[5] There thus can be no question that Defendants have received extensive advice about the decisions at issue.[6] It is obvious that Defendants' understanding of those cases and why Defendants claim the cases support their views will have been substantially influenced by the advice they received from counsel. Defendants' implicit suggestion that the statements in their Proffer represent Scott and Garrett Reynolds' freestanding understanding of those cases independent from counsel's advice strains credulity.

Moreover, Defendants' Proffer presents a one-sided view of the caselaw, which the sword-shield doctrine aims to prevent. First, Defendants identify only those features of the cases that are favorable to them, leaving out, for example, that *Public.Resource.Org*'s fair use analysis stressed that defendant's non-profit status and that none of the decisions at issue are binding in the Ninth Circuit.

---

[5] *ICC*; *Facility Guidelines Inst., Inc. v. UpCodes, Inc.*, 677 F. Supp. 3d 955 (E.D. Mo. 2023); and *Am. Soc'y for Testing & Materials v. UpCodes, Inc.*, 2024 WL 4374117 (E.D. Pa. Oct. 2, 2024).

[6] It is similarly unfathomable that Defendants did not receive legal advice about the Pro Codes Act, creating similar issues with respect to that testimony.

OBJECTION TO DEFENDANTS' ANTICIPATED TESTIMONY RE OTHER LAWSUITS & PRO CODES ACT

Second, Defendants' Proffer omits, for obvious reasons, any reference to *Practice Management* or to this Court's Summary Judgment Order. Defendants appear to take the position that their "independent" understanding of the caselaw extends only to decisions that are favorable to them, allowing them to emphasize those decisions that (they insist) support their position while invoking privilege to block discussion of those decisions that do not. That is an extraordinarily inequitable result. *See* NFPA MIL No. 1, at 7-8.

### C. Defendants' Guardrails Would Not Reduce The Prejudice Or Juror Confusion.

Defendants' proposed guardrails are illusory. Defendants provide a list of ways that they will limit their testimony, but include the critical caveat that those limitations are "subject to NFPA opening the door." Proffer 2. In other words, Defendants will limit their testimony to their strongest cases highlighting only their strongest facts *only* if NFPA plays on those terms. But if NFPA attempts to cross-examine or otherwise respond to Defendants' presentation with anything beyond that carefully curated list, all bets are off. That is a plainly untenable result: As NFPA has repeatedly made clear, if Defendants introduce caselaw evidence, NFPA will have no choice but to respond with its own caselaw evidence—both about other decisions and about other facts of the decisions that Defendants identify. *See, e.g.*, NFPA MIL No. 1, at 10. That is, as Defendants well know, NFPA will necessarily "open[] the door" to go beyond Defendants' Proffer, thereby allowing Defendants to ignore their guardrails. Proffer 2.

### III. NFPA'S WITHDRAWAL OF ITS WILLFULNESS CLAIM ELIMINATES ANY BASIS FOR DEFENDANTS TO ARGUE OR INTRODUCE EVIDENCE ABOUT CASELAW OR THE PRO CODES ACT

With willfulness out of the case, the Rule 403 balance weighs overwhelmingly for excluding Defendants' proffered testimony. The prejudice and disruption to trial flowing from such discussion remains, but the relevance of that testimony vanishes. The Court's MIL Order said the caselaw evidence could be

"relevant to the issue of willful infringement and these defendants' 'good faith' belief in the lawfulness of their conduct" and that Defendants could discuss the Pro Codes Act only to show their "good faith belief . . . to negate willful infringement." Dkt. 295, at 2-3. That testimony goes only to willfulness; if willfulness is out, the testimony should be too. Defendants' own representations echo that same approach: throughout their oppositions to NFPA's MILs, and during the Pretrial Conference, Defendants repeatedly argued that discussion of caselaw and the Pro Codes Act was necessary because NFPA had stated its intention to pursue enhanced statutory damages for willful infringement.[7]

Eliminating willfulness and, in turn, *all* discussion of caselaw and the Pro Codes Act will also eliminate the need to strike a difficult balance between minimizing the problems inherent from such discussion and the need to allow Defendants to present some argument on willfulness. In its MIL No. 1, NFPA said it would be appropriate for Defendants to make limited references to *Veeck* and *ICC* as part of their defense to willfulness. *See* MIL No. 1, at 2. As discussed, Defendants' Proffer makes clear that they are not content to offer that sort of "factual" testimony of "I read cases," but instead want to offer testimony of "Here is my understanding of what the case said." Tr. 47:1-6; *see* pp. 3-4, *supra*. NFPA will drop willfulness because of the need for clear rules regarding this testimony. If

---

[7] *See, e.g.*, Opp. to NFPA MIL No. 1, at 1 ("NFPA acknowledges that by seeking additional damages for willful infringement, it has made UpCodes' understanding of the relevant caselaw a live issue at trial."); *id.* at 9 ("By making willfulness an issue at trial, NFPA has opened the door to allowing UpCodes to explain why it had a 'good faith belief . . . .'"); Opp. to NFPA MIL No. 3, at 7 ("NFPA opened the door to a discussion of the Pro Codes Act by discussing UpCodes' alleged willfulness and putting Defendants' mental state at issue. . . . NFPA could have avoided a discussion of the Pro Codes Act had it not elected to pursue enhanced statutory damages from UpCodes."); Tr. 36:20-37:3, 38:2-22, 40:20-41:4, 42:20-43:2, 56:10-17.

willfulness is not an issue, there is no basis for even limited references to decisions like *Veeck* or *ICC*.[8]

In their Proffer, Defendants contend that they should still be permitted to discuss caselaw and the Pro Codes Act even if NFPA does not seek willfulness damages (1) as part of their argument on the first fair use factor, and (2) to argue the jury should fix statutory damages in a lower part of the range. Proffer 1-2.

Defendants forfeited those arguments by not raising them in their opposition to NFPA's MILs and, instead, arguing only about willfulness.[9] They are also wrong: The first-factor inquiry is an objective one, rendering Defendants' subjective understanding of the cases irrelevant. *See Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 545 (2023).[10] Any minimal probative value such evidence may have to the question of where within the statutory range to set an award is greatly outweighed by the prejudice and confusion the evidence would guarantee. Given the myriad issues with this evidence identified by NFPA in its MILs and raised by the Court during the Pretrial Conference, the Rule 403

---

[8] To be clear, NFPA does *not* "agree[] that UpCodes may offer" *any* testimony regarding *ICC* or *Veeck* if NFPA does not pursue willfulness. Proffer 3 n.1, 4 n.2.

[9] Defendants' opposition to MIL No. 3 includes a cursory assertion that Pro Codes Act testimony is relevant to the second fair use factor, but says nothing about the first factor and is express that "NFPA could have avoided a discussion of the Pro Codes Act had it not elected to pursue enhanced statutory damages from UpCodes." Opp. to NFPA MIL No. 3, at 7. NFPA now makes exactly that election.

[10] Defendants' quotation from a 2004 out-of-circuit opinion to support its first-factor argument ignores more recent binding caselaw. *See Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*, 2021 WL 3721438, at *1 (9th Cir. Aug. 23, 2021) ("The Supreme Court has minimized the relevance of bad faith as part of the first factor, and we conclude it plays no significant role here[.]" (citing *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021)); *Google*, 593 U.S. at 32 (noting "justifiable" "skepticism" regarding "whether bad faith has any role in a fair use analysis").

balance weighs decidedly against admission of this evidence if NFPA does not pursue willfulness.

## IV. CONCLUSION

NFPA respectfully requests that the Court exclude any argument, testimony, or exhibits quoting from, describing, or referencing caselaw or the Pro Codes Act.

DATED:  March 7, 2025                MUNGER, TOLLES & OLSON LLP


By: _____*/s/ Rose Leda Ehler*_____
ROSE LEDA EHLER
Attorneys for
NATIONAL FIRE PROTECTION ASSOCIATION, INC.